[No. 8335.    Department Two.    December 2, 1909.]

THE STATE OF WASHINGTON, *on the Relation of R. Lee Purdin, Appellant*, v. B. A. GAULT, *Respondent*.[1]

COURTS—POLICE JUSTICE—SELECTION FROM JUSTICE OF THE PEACE—STATUTES—CONSTRUCTION—"MAY" OR "MUST." Under Laws of 1903, p. 102, specifying as one of the officers of a town of the third class, to be appointed by the mayor, "a police justice, who may be one of the justices of the peace of the precinct," it is not required that one of such justices be appointed, from the fact that cities of the first class are limited to two justices of the peace, one of whom must be appointed as police justice, and that Laws 1890, page 196, also authorizes the selection of a police justice from the two justices of the peace in towns or cities; since "may" is not to be construed as "must" unless a duty is imposed making a permissive construction repugnant to the intent or leading to an absurdity.

Appeal from a judgment of the superior court for Kittitas county, Preble, J., entered March 6, 1909, in favor of the defendant, upon an agreed statement of facts, dismissing a proceeding in the nature of a *quo warranto*.    Affirmed.

*E. E. Wager* and *Graves & McDaniels*, for appellant.

*Hovey & Hale*, for respondent.

DUNBAR, J.—In the year 1908 the relator R. Lee Purdin, being one of the duly elected justices of the peace in and for Ellensburg, in Kittitas county, which is a city of the third class, was designated and constituted police justice by appointment of the mayor, confirmed by the council. At the last general election, the relator, Purdin, and one W. W. Bonney were elected justices of the peace in and for said

[1]Reported in 105 Pac. 242.

precinct or city of Ellensburg. But in January, 1909, the mayor designated and appointed the defendant, B. A. Gault, as police justice. Gault was not, and did not claim to be, a justice of the peace. Thereupon the relator instituted this action. The cause was tried to the court, and judgment was rendered in favor of the defendant. This appeal is taken from that judgment.

This case presents the question whether, under the statute providing for the appointment by the mayor of a police justice in cities of the third class, any one other than one of the two justices of the peace regularly elected by the voters therein can be appointed to, or exercise the functions of, such office. Section 4 of chapter 113 of the Laws of 1903, page 202, provides as follows:

"The government of such town shall be vested in a mayor and council, to consist of five members, a clerk, a treasurer, a marshal who shall be *ex-officio* tax and license collector, a police justice who may be one of the justices of the peace of the *precinct* in which said town is situated; and such subordinate officers as are hereinafter provided for."

It is the contention of the appellant that the statute contemplated the practice generally prevailing in the cities of the first class, which provides for the selection of the police justice from one of the justices of the peace elected; and it is argued that it is not to be presumed that the legislature, while limiting the number of justice courts in cities of the first class and confining the appointment of police justice to one of the justices of the peace regularly elected therein, should confer larger powers upon cities of the third class, by giving to the mayor of the smaller cities discretionary authority to enlarge the number of justice courts by appointing one or more police justices in addition to the justices of the peace regularly elected; and that a legislative construction has been placed upon this enactment in the Laws of 1890, page 196, § 138, which is to the effect that,

"There shall also be elected, as hereinafter specified, a po-

lice justice, or so many as the council may deem necessary. The justice or justices so elected may be selected from the justices of the peace duly elected under the laws of the state of Washington, and while acting in city or town matters may hold office for that purpose anywhere within the city or town. Such justices of the peace shall have jurisdiction over all offenses defined by any ordinance of the city or town, and all other actions brought to enforce or recover any penalty, forfeiture," etc.;

the section again providing, further on, that "all civil or criminal proceedings before such justice of the peace," etc. Many other questions are discussed by the appellant in support of his contention that the word "may" in the statute should be construed as mandatory and equivalent to "must."

A justice of the peace is an officer provided for by the constitution, with jurisdiction prescribed by law under constitutional authority. The jurisdiction of a police justice is more limited, extending only to questions arising under the town or city ordinances. If the jurisdiction had been the same, there would have been no occasion for the legislature to make provision for the latter. It is true that § 138 of the Laws of 1890 refers to these officers as justices of the peace; but, as was well said by the learned judge who tried the case:

"The identity of two officers is determined, not by the name by which they may be called, but by the identity of their functions, and whatever the officer clothed only with the circumscribed jurisdiction conferred by § 138 may be called, he is not in fact a justice of the peace in the ordinary statutory and constitutional sense of that word, because he has not the jurisdiction of such justice of the peace."

Nor do we think that there is anything inconsistent with intelligent legislative intention in conferring power upon the council to appoint magistrates of this character beyond the number of justices of the peace provided for by law; for it cannot be said to be unwise to give this discretion to the city council, to be exercised for the best interests of the city, in

view of all the existing conditions, both as to the qualifications of the justices of the peace elected, and the relative amount of business falling within the jurisdiction of the justice of the peace, or within the more limited jurisdiction of the police justices. We see no constitutional invasion by this construction. Nor does it militate against this construction that the legislature has adopted a different policy in regard to cities of the first class. In any event, it has seen fit to use the mandatory expression in one case and the permissive in the other. Section 2 of chapter 85, page 135, Laws 1899, the act relating to justices of the peace in cities of the first class, is as follows: "Within ten days after such election the mayor of the city shall appoint one of the justices so elected the police justice or police judge of such city." There would seem to be no good reason why the legislature should not have used the same language when legislating in regard to towns of the third class, if the intention had been to make it the duty of the mayor to appoint police justices from the justices elected.

The learned counsel says he will not enter into any dogmatic definitions of the words "may" and "must"; yet it seems to us that this is a matter which necessarily must be considered. The word "may," according to its original construction, is permissive and should receive that interpretation unless such a construction would be obviously repugnant to the intention of the legislature, to be collected from the terms of the act, or would lead to some other inconvenience or absurdity. *Medbury v. Swan,* 46 N. Y. 200.

"The question whether the word 'may' is to be construed as mandatory or discretionary has been much discussed, but the general rule is that the ordinary meaning of the word is that there is involved a discretion, and it is to be construed in a mandatory sense only where such construction is necessary to give effect to the clear policy and intention of the legislature; that where there is nothing in the connection or the language or in the sense or policy of the provision to require an unusual interpretation, it will be given its ordi-

nary meaning; and that where, by the use in other provisions of the statute of mandatory words, it appears that the legislature intended to distinguish between these words and "may," "may" will not be construed as imperative." 5 Words & Phrases, 4420.

And this is the universal rule. The word "may," in every act imposing a duty means "shall." So it is held, under acts 1868-69 providing that, when the personal estate of a decedent is insufficient to pay debts, etc., the executor or administrator may apply to the superior court by petition to sell the decedent's real property for the payment of debts, the word "may" means "must." *Pelletier v. Saunders*, 67 N. C. 261. But in this case, of course, no imperative duty is resting upon the council compelling them to appoint from the justices of the peace, and the common-sense meaning of the word must therefore obtain, and the intention of the legislature must be presumed to have been to confer discretion on the mayor in this respect.

This presumption, we think, has not been overcome by any avowed policy of the legislature affecting officers of this kind, and the judgment of the lower court will therefore be affirmed.

RUDKIN, C. J., CROW, MOUNT, and PARKER, JJ., concur.